ALTENBERND, Judge.
Gail M. Fern, as trustee of the Gail M. Fern Trust, appeals a final judgment in the amount of $71,375.94 in favor of the Eagles’ Reserve Homeowners’ Association, Inc. The judgment arises from Ms. Fern’s long-held belief, alleged as a defense in this action, that she is not required to pay *258 an assessment for unauthorized expenditures by the Association. The final judgment notes that she “has objected multiple times, in various forums, to her legal obligation to pay the special assessments at issue in this matter.” While that finding of fact is entirely correct, the record does not demonstrate that Ms. Fern’s defense has been barred by res judicata or collateral estoppel or otherwise resolved in a prior action. We conclude that, at least to some degree, she has been correct in her defense throughout all of these proceedings. Because the circuit court did not adjudicate Ms. Fern’s defense, and instead entered judgment for the Association on the incorrect assumption that Ms. Fern should have obtained a prior ruling in her favor on her defense, we reverse.
I. THE COMPLEX PROCEEDINGS TO THIS POINT
Eagles’ Reserve is a community of townhouses and villas that was constructed pri- or to 2001 on land in northeast Pinellas County, previously famous for a giant sculpture of a boot located on Boot Ranch. Apparently, the initial buildings in this community were poorly constructed. These units required substantial reconstruction, whereas newer units required little or no repair. The members of the Association quickly divided into two camps — the owners of older units (the Berger group), who maintained that the Association had the power and the duty to perform extensive repairs on the townhouses, and the owners of the newer units (the Klak group), who maintained that the repairs were primarily the responsibility of the unit owners. Ms. Fern, through her trust, owned a newer unit and generally sided with the Klak group. Litigation erupted when both the Klak and Berger groups filed separate lawsuits agaipst the Association. These lawsuits were eventually consolidated. Before that occurred, the circuit court entered an order in the Berger lawsuit appointing Andrew Bolnick as receiver to perform repairs and impose assessments, adopting essentially the position of the Berger group. Meanwhile, the same court had entered a final judgment granting declaratory relief in the Klak lawsuit.
That final judgment was appealed to this court in 2001. Judge Canady (now Justice Canady) wrote a lengthy opinion reversing the judgment on appeal and remanding for further proceedings. See Klak v. Eagles’ Reserve Homeowners’ Ass’n, 862 So.2d 947 (Fla. 2d DCA 2004). That opinion provides additional factual information, which we omit to avoid duplication. In that opinion, we held that the trial court had given an overly broad interpretation to the phrase “exterior of the Dwelling Units,” and on this basis had improperly authorized the receiver to perform extensive structural repairs to property owned by individual homeowners. Id. at 954. We concluded that the Association had authority to maintain only the outer surfaces of the dwelling units. Id. at 954-55.
Because the circuit court had given the receiver marching orders to repair these units without delay and before the conditions resulted in even greater damage to the townhouses, the receiver had proceeded with the repairs while the appeal was pending in this court. Before our opinion issued, the receiver had expended a considerable sum on these repairs. By January 1, 2003, Ms. Fern had received assessments from the receiver totaling $28,000, apparently for work performed primarily to repair townhouses that were owned by other members of the Association. Presumably, the other unit owners received similar assessments.
Even before our opinion issued, the receiver sued Ms. Fern in county court for *259 unpaid assessments because she had paid only $4000 of the assessments. That action was transferred to the circuit court in 2003. In an order entered on the style of the consolidated proceedings involving the Klak and Berger lawsuits, the action against Ms. Fern and several other similar actions brought by the receiver on behalf of the Association were designated as “companion cases” and also consolidated with the Berger and Klak cases. For the next four years, little or nothing occurred in the action against Ms. Fern. The reason for this inactivity is explained by what occurred in the Klak and Berger cases following the issuance of mandate in Klak.
Our mandate in the Klak opinion did not give precise instructions. We simply ordered further proceedings “consistent with this opinion.” 862 So.2d at 955. At least on first examination by this panel, it seemed that the proceedings on remand might logically have required the circuit court to have someone perform an accounting to separate proper expenses for repair of the exterior of the buildings, as defined in Klak, from improper expenses for repairs beyond this scope. See id. Following such an accounting, the members of the Association could be assessed for their proportionate share of the expenses to repair the exterior, but the Association would need to seek payment or reimbursement for the remaining expenses from the individually benefitted unit owners. Members who had already paid more than their fair share would be entitled to an appropriate reimbursement.
The circuit court never had a reasonable opportunity to fulfill our mandate. As the circuit court was beginning to sort out the many issues among the parties, the Association filed for bankruptcy protection under Chapter 11 of the U.S. Bankruptcy Code on July 1, 2004. Prior to the filing of this bankruptcy proceeding and after Ms. Fern’s case was consolidated with the Berger and Klak cases, the circuit court issued an order to show cause why the Association should not be held in contempt for failure to pay the fees of the receiver. In its memorandum in response, the Association stated that it could “not collect assessments for repairs that are not limited to the outer surface of the Dwelling Units” in light of this court’s ruling in Klak. It explained that it should not be held in contempt when it could not lawfully collect the assessments needed to pay the receiver. The Association also filed a motion to add parties, specifically the benefitted unit owners against whom the Association had apparently already filed actions for quantum meruit and equitable liens. Thus, it appears that the Association’s initial opinion of this court’s mandate in Klak was essentially the same as this panel’s initial opinion.
After the filing of the bankruptcy proceeding in July 2004, two activities occurred in the consolidated cases that are worthy of note. The receiver had filed a motion for discharge in April 2004. Ms. Fern, the Association, and others objected to his discharge, but the trial court entered a final order discharging the receiver in December 2004. Thus, the receiver has not been a party to these proceedings for a decade.[1]
Second, in August 2005, the Berger group filed notices of two settlements in the bankruptcy court that resulted in voluntary dismissals without prejudice in the state court proceedings. Nothing in these settlements appears to resolve Ms. Fern’s *260 defense to the state court proceeding filed against her.
Our record contains very little additional information about the bankruptcy proceeding. We do have a copy of the amended plan of reorganization that was approved by the bankruptcy court in 2006. Over the objections of persons, including Ms. Fern, the bankruptcy court approved the plan of reorganization under which the Association would “continue to [sic] its collection efforts on the liens it holds and in other litigation it has brought to collect monies it believes are due to it.” Ms. Fern objected to the confirmation of the plan of reorganization on the basis that the Association’s assessments against her were not enforceable as a result of our mandate in Klak. But nothing indicates that the bankruptcy court decided whether the assessments were in fact enforceable when it summarily denied this objection to the confirmation.
Following the approval of this plan, the Association eventually returned to the underlying litigation in state court. In 2012, the Association filed a motion for summary judgment. Contrary to the position that it took in its memorandum of law in 2004, the Association claimed that the assessments were fully valid and enforceable against Ms. Fern. It based its change in legal position on Ocean Trail Unit Owners Ass’n v. Mead, 650 So.2d 4 (Fla.1994). Ms. Fern responded to the motion for summary judgment with a motion to strike, arguing that Klak had the exact legal effect that the Association had explained in 2004.[2] The outcome of Ms. Fern’s motion for summary judgment is not clear from our record. However, the Association obtained a partial final judgment of foreclosure against Ms. Fern in February 2018. Our record suggests that her property may have been sold as a result. One way or the other, the action by the Association to collect the assessment from Ms. Fern remained pending. She filed a motion for summary judgment, claiming that she could not be personally responsible to pay the Association’s assessments. That motion was denied and the case was set for trial.
The trial was relatively short. The Association established that the assessments had been made and that Ms. Fern had not paid them. It suggested that the bankruptcy court, by recognizing that the Association could proceed to collect on assessments and denying her objections to confirmation of the reorganization plan, had somehow ruled against Ms. Fern’s defense in her own case. It also argued that the holding in Ocean Trail compelled Ms. Fern to pay the assessments despite the holding in Klak.
The trial court commented that it did not find “much guidance” in this court’s holding in Klak. The trial judge found that Ms. Fern had been objecting in various ways throughout the earlier proceedings, but explained that “I don’t see that there were any rulings in your favor that would say, therefore, you don’t have to pay this special assessment today.” Accordingly, it entered the monetary judgment against Ms. Fern and she appealed to this court.
II. THE ASSOCIATION DID NOT ESTABLISH AT TRIAL THAT MS. FERN’S DEFENSE WAS WAIVED OR BARRED BY ANY ACTION IN THE PROCEEDING DECADE OF LITIGATION
Despite the lengthy recitation of the facts in this case, the dispositive issue is *261 relatively simple. Ms. Fern was not required to obtain a prior ruling in her favor on her defense; the Association was required to establish that the defense had been resolved by some order in a prior proceeding that was binding on Ms. Fern. Nothing in this record shows that any prior court entered an order adjudicating this issue. As previously explained, the circuit court in Klak did not have the opportunity to do so. The bankruptcy court was required only to decide whether Ms. Fern’s arguments provided a valid basis on which to deny confirmation of the plan of reorganization — not whether her arguments provided a valid defense to paying the assessments against her. Its summary denial of her objection does not appear to resolve her defense.
The Florida Supreme Court’s decision in Ocean Trail is factually distinguishable from this case. The issue in Ocean Trail involved the enforcement of an assessment against condominium owners to pay a recorded judgment against the association. 650 So.2d at 5-6. The lawsuit had been brought by condominium owners. Id. As the prevailing parties in the lawsuit, it seemed inequitable to them that they should have to pay their pro rata share of the judgment that they had obtained against the condominium association. The supreme court emphasized that “[i]n the condominium form of ownership, protection of the common elements is vital,” because “each unit owner owns a proportionate undivided share of the common elements appurtenant to the unit.” Id. at 7 (citing §§ 718.103(10), (24), Fla. Stat. (1987)). It concluded that if assessments could not be enforced to pay judgments against the condominium’s property, the condominium could be destroyed to the detriment of all unit owners. Id. Because the judgment imperiled the association’s property, it was appropriate to assess all owners of that property to prevent execution of the judgment on that property. Id. Moreover, in Ocean Trail, the underlying dispute was resolved among the condominium owners and an insurance company so that the funds from the special assessment were ultimately used to reimburse all unit owners for the “original purchase assessment.”
The assessments in this case were not to pay a judgment. The Association in this case is a homeowners’ association, not a condominium association, and the Association owns only a small amount of the property as common elements. The town-homes are owned by fee simple. The assessments in this case were not to pay any established legal obligation of the Association but to maintain and repair property that was individually owned by the members of the Association.
It may be that this court in Klak did not provide much guidance in our mandate, which simply reversed and “remand[ed] for proceedings consistent with this opinion.” 862 So.2d at 954. But when a receivership continues during the course of an appeal and many significant matters occur outside the record of the appellate court, the court has little option but to give an open-ended mandate. On remand from our court in 2004, the contractors who had fully performed their contracts to repair the homes in Eagles’ Reserve were certainly entitled to be paid. If those contractors eventually obtained judgments against the Association, then perhaps the members could be assessed to pay the judgment while working out among themselves how to address the inequities in the assessments.
The point is that the Association and its members had more than one possible method in 2004 to cure the legal problems arising from the circuit court’s error in interpreting the power given to the Associ *262 ation to maintain “the exterior of the Dwelling Units.” This court had no right, and undoubtedly no ability, at that time to mandate a particular course. In the end, it seems logical that all members of the Association should have been required to pay their fair share of the expenses involved in the actual maintenance of the exterior or “outer surface” of the units, as defined in Klak, whereas the individually benefitted owners of the units that received additional repairs during the receivership should ultimately have borne the cost of those repairs. Whether this logic is the law that should have applied on remand in 2004 has never been established. And Ms. Fern’s defense, which may well be only a partial defense, has never been adjudicated in the circuit court.
Accordingly, we reverse the judgment on appeal. Once again, we find ourselves in a posture where we can only remand for further proceedings consistent with this opinion and with our earlier opinion in Klak.
Reversed and remanded.
NORTHCUTT and CRENSHAW, JJ., Concur.

. The style of the notice of appeal listed the appellee as "Andrew Bolnick, as receiver for Eagles’ Reserve Homeowners’ Association, Inc.” We have changed the style for this opinion.

. Ms. Fern’s motion to strike the Association’s motion for summary judgment represents that another homeowner had raised the same defense that Ms. Fern was raising in this case and had prevailed on a summary judgment against the Association. Our record does not seem to have the necessary documents to take judicial notice of any such case or outcome.